RITA K. WHISLER et al., Minors, by next friend Lois Deater; WILFORD E. WHISLER et al., Appellees, v. MILTON ESTES et al., Appellants.

No. 41662.

JUNE 20, 1933.

Kelly, Shuttleworth & McManus and H. B. White, for appellant.

Tinley, Mitchell, Ross & Mitchell, for appellees.

MITCHELL, J.—On May 29, 1923, Emily H. Morgan, the grandmother of the appellees, died testate. She left surviving her three living children, to wit, Molly Pauly, Lulu Sherlock, and L. D. Morgan. Gertrude Whisler, the mother of the appellees, who was also a daughter of Emily H. Morgan, predeceased the latter. For the appellees, then all minors, Emily H. Morgan provided in her will for the establishment of a trust fund in the amount of $9,000. The trustee under the will was directed to pay the sum of $1,000 with accumulated interest thereon to John Wendell Whisler and Wilford E. Whisler when they reached their majorities; $1,000 to Cletus V. Whisler, with interest, when he attained his majority; and $2,000 each to Rita K. and Maxine E. Whisler, as they reached their respective majorities. The will left all the rest, residue and remainder of the estate to the surviving living children of the testatrix, to wit, Molly Pauly, Lulu Sherlock, and L. D. Morgan. Emily H. Morgan's will was admitted to probate on June 16, 1923. Sigle Pauly, the executor and trustee named in the will, declined to act. Thereafter letters were issued to L. D. Morgan, as administrator with the will annexed of the estate of Emily H. Morgan, deceased; and he qualified. However, L. D. Morgan refused to act as trustee for the appellees under the terms of the will. Milton Estes, one of the appellants, was appointed and he qualified as trustee on October 17, 1923, and filed bond executed by the United States Fidelity & Guaranty Company, one of the appellants, as surety. The bond given by Milton Estes as trustee was in the amount of $30,000. The condition of said bond was as follows:

"The conditions of the foregoing obligation are, that, whereas the above named principal has been duly appointed trustee of the beneficiary share of estate of Emily H. Morgan, deceased; now—

"If said principal will as such trustee render a true account of his office and of his doing therein to the proper authority, when required thereby or by law, and will promptly pay over to the

person or officer entitled thereto, all money which may come into his hands by virtue of his said office, and will promptly account for all balances of money remaining in his hands at the termination of his office, and will exercise all reasonable diligence and care in the preservation and lawful disposal of money, books, papers and securities, or other property appertaining to his said office, and deliver them to his successor or to any other person authorized to receive the same, and will faithfully and impartially without fear, favor, fraud or oppression, discharge all of the duties now or hereafter required of his office by law, the surety on this bond to be liable for all money or property that may come into the hands of said principal at any time during his possession of said office, then this bond to be void; otherwise in full force."

The bond was filed with and approved by the clerk of the district court on October 17, 1923. On the back of the bond is shown its approval and the oath of the trustee signed and sworn to. Renewals and approvals by the clerk also appear upon the back of said bond.

L. D. Morgan, the administrator with the will annexed, was authorized to sell certain Liberty bonds in the amount of $9,500, which constituted part of the assets of the Emily H. Morgan estate, and on the 8th day of December, 1923, L. D. Morgan, as administrator with the will annexed of the estate of Emily H. Morgan, deceased, in compliance with the terms of the will, turned over to Milton Estes, trustee, the proceeds of the sale of Liberty bonds in the amount of $9,280.63. It was stipulated that the sum of $9,280.63 came into the hands of Milton Estes, trustee, as the proceeds of the trust fund created for the benefit of the appellees in the will of the testatrix, Emily H. Morgan. After the death of the testatrix there was dissatisfaction with her will, and there seems to have been some controversy between L. D. Morgan, administrator with the will annexed, Molly Pauly, and Lulu Sherlock, son and daughters of Emily H. Morgan, deceased. The controversy never developed into a court action, but was simply a family fight and was finally adjusted and settled on December 31, 1923, by a voluntary assignment of a one-third interest in a certain $30,000 mortgage which was the property of Emily H. Morgan at the time of her death. This assignment was made to Milton Estes as trustee for these appellees. This assignment was made pursuant to some private understanding and agreement

among the parties. The details of this arrangement are not clearly shown by the record. On August 12, 1924, Milton Estes received from L. D. Morgan, $1,269.78, which represented fees of L. D. Morgan, as administrator with the will annexed of the Emily H. Morgan estate, and which he voluntarily gave to Milton Estes, trustee, for the use and benefit of the appellees. Certain other interest items were also received by Milton Estes, being part of the interest on the $30,000 mortgage. On March 6, 1925, the trustee received and deposited with his other funds one-third of the proceeds of the $30,000 mortgage above mentioned, which, with interest, equalled $10,450.

It is the claim of the surety company that under the bond which it wrote for Milton Estes, trustee, the surety company is not liable for any funds which came into the hands of Milton Estes, trustee, except the amount which he received as trustee under the will of Emily H. Morgan, deceased, and that the voluntary settlement which was effected between the parties, and under which settlement the sum of $10,450 was turned over to Milton Estes, trustee, for the benefit of the appellees, was not covered by the bond which the appellant surety company wrote and that it is not liable and does not have to account for any funds other than the $9,280.63 which Milton Estes, trustee, received from the Emily H. Morgan estate in compliance with the terms of the will. The lower court found against the bonding company and the judgment was entered in the amount of $5,701.12, with interest.

The appellant surety company in this case does not deny that it is liable, but says that under the facts of the record the judgment which was rendered against it by the lower court ought to be reduced.

The bond which the appellant surety company signed for Milton Estes, trustee, in the case at bar, is a statutory bond. It is, in fact, nothing but a guardian's bond, probate bond, or executor's bond. The condition of this bond is prescribed by the statute, section 1059 of the Code of 1931, and the bond as filed is substantially in the language of the statute.

Code, section 1059, is as follows:

"All other public officers, except as otherwise specially provided shall give bond with the conditions, in substance, as follows:

"That as _____ (naming the office), in _____ (city, town, township, county, or state of Iowa), he will render a true account

of his office and of his doings therein to the proper authority, when required thereby or by law; that he will promptly pay over to the officer or person entitled thereto all moneys which may come into his hands by virtue of his office; that he will promptly account for all balances of money remaining in his hands at the termination of his office; that he will exercise all reasonable diligence and care in the preservation and lawful disposal of all money, books, papers, securities, or other property appertaining to his said office, and deliver them to his successor, or to any other person authorized to receive the same; and that he will faithfully and impartially, without fear, favor, fraud, or oppression, discharge all duties now or hereafter required of his office by law."

Code, section 1060, is as follows:

"The sureties on such bond shall be liable for all money or public property that may come into the hands of such officer at any time during his possession of such office."

Code, section 1061, is as follows:

"All other bonds required by law, when not otherwise specially provided, shall be conditioned as the bonds of public officers."

Code section 11887, is as follows:

"Every executor or administrator, except as herein otherwise declared, before entering on the discharge of his duties, must give a bond in such penalty as may be required by the court, to be approved by the clerk, conditioned for the faithful discharge of the duties imposed on him by law, according to the best of his ability, and take and subscribe an oath the same in substance as the condition of the bond, which oath and bond must be filed with the clerk."

Code, section 11876, provides:

"Trustees appointed by will or by the court must qualify and give bonds the same as executors, and shall be subject to control or removal by it in the same manner, and others appointed."

In the bond which the appellant surety company signed for Milton Estes, trustee, it was provided among other things as follows:

"If said principal will as such trustee render a true account of his office and of his doings therein to the proper authority when

required thereby or by law, and will promptly pay over to the person or officer entitled thereto all money which may come into his hands by virtue of his said office * * *."

This is practically the same condition that is contained in the bond which is prescribed by section 1059 of the Code of 1931.

Section 11876 of the Code, above referred to, requires that the bond given by trustees appointed by the court—and in the case at bar we must keep ever in mind the fact that Milton Estes was appointed by order of the court—said bond so given shall be the same as an executor's bond, in other words, a statutory bond. So there can be no question under the statutes of this state, as set out in this opinion, but that the bond which Milton Estes gave as trustee was a statutory bond, and that the surety that signed said bond, to wit, the appellant surety company in this case, is liable to the same extent that a surety would be that signed an executor's bond.

Section 1060 of the Code, as above set out, provides that the surety on such bond shall be liable for all money or public property that may come into the hands of such officer at any time during his possession of said office.

Thus, it seems to us that if the property which the appellees now seek to have the appellant surety company account for came into the hands of Milton Estes as trustee, then, in that case, the surety company is liable on said bonds. The record shows without dispute that Milton Estes was appointed trustee by order of the court. Said order provides:

"It further appearing to the court that L. D. Morgan refused to qualify as the trustee for the grand-children mentioned in the last will and testament of Emily H. Morgan, deceased. That Milton Estes of Sidney, Iowa, is appointed as such trustee, and his bond is fixed at $30,000 with sureties to be approved by the clerk of this court.

"Dated and signed at Sidney, Iowa, this 26th day of June, 1923."

Milton Estes did not qualify until October 17, 1923, and on the 8th day of December, 1923, he received the money which came through the will of Emily H. Morgan. Just twenty-three days after Milton Estes, as trustee, received the money through the will of Emily H. Morgan, deceased, or, to wit, on the 31st day of December, 1923, there was an assignment made to Milton Estes, trustee, by Molly M. Pauly, Lulu M. Sherlock, and L. D. Morgan, of an undivided one-third interest in a $30,000 mortgage which belonged

to the estate of Emily H. Morgan, deceased. It seems that the heirs of Emily H. Morgan were not satisfied with the amounts of money which were to become the property of the appellees in this case under the will of Emily H. Morgan, and that a friendly adjustment was made among the heirs that a one-third interest in a certain mortgage belonging to the estate of Emily H. Morgan was to be assigned to Milton Estes, as trustee, for the benefit of the appellees in this case. This arrangement was entered into just twenty-three days after Milton Estes qualified as trustee. The assignment was made to Milton Estes, trustee. This assignment was duly filed for record. On the 6th day of March, 1925, the one-third interest in the mortgage which had been assigned to Milton Estes, trustee, or the amount of $10,450, was paid to Milton Estes, trustee, and on the same day Milton Estes, as trustee, executed a release of the said mortgage and the same was filed for record.

Every single penny that came into the hands of Milton Estes as trustee came from the estate of Emily H. Morgan. It came into the hands of Milton Estes while he was trustee of these appellees by virtue of his being appointed trustee. If he had never been appointed trustee, these funds would never have come into his hands. When Milton Estes made his report as trustee he listed the amounts of money received by him, and included in his report the sum of $10,450, being the amount of money received by him as trustee from the real estate mortgage which was the property of Emily H. Morgan during her lifetime, and of which, under the settlement between the heirs after her death, one-third, or the sum of $10,450, was to be turned over and was turned over to Milton Estes, trustee, for the benefit of the appellees. Milton Estes himself testified that the money came into his hands as trustee. When it came time to figure the fees of the trustee and the attorneys for the trustee, Milton Estes included the item of $10,450. Thus it appears clearly from this record that Milton Estes was appointed trustee by order of the court; that he was required under that order to give a bond; that he gave a bond in the statutory form, signed by the appellant surety company; that he received the money from the sale of the Liberty bonds in December, 1923; that twenty-three days later the heirs of the Morgan estate made a friendly adjustment or settlement by which they agreed to turn over to Milton Estes, trustee, a one-third interest in a certain mortgage which belonged to the estate of Emily H. Morgan; that said one-third interest, or the sum of $10,450, was turned over to Milton

Estes, trustee, in March, 1925; that every penny that Milton Estes received as trustee came from the estate of Emily H. Morgan, deceased; that it came into his hands because of the fact that he was trustee; that in all his reports as trustee, covering a period of approximately eight years, the said Milton Estes, as trustee, listed all these sums of money, including the sum of $10,450. The court required a bond of $30,000. That bond was signed by the appellant surety company. If the contention of the appellant surety company was correct, that it was liable only for $9,280.63, there would have been no reason for fixing the bond at the amount of $30,000. The period that Milton Estes acted as trustee covered approximately eight years, and during all that time the appellant surety company was surety on his bond. The appellant surety company has stood by for a period of eight years, accepting the premiums on this large bond, and now that there is liability upon said bond, it is for the first time raising a question as to its liability. The appellant surety company agreed under the terms of its bond that in case Milton Estes, as trustee, did not account for the moneys which came into his hands, the surety company would so account. All the money which came into the hands of Milton Estes came into his hands as trustee, and it is the duty of the surety company to account for the moneys for which its principal, Milton Estes, has failed to account.

On February 19, 1931, Milton Estes, trustee, filed an amendment to his trustee's report, setting up a complete statement of his doings as trustee during the entire life of the trusteeship, and accounting for the moneys which came into his hands as trustee. He accounts for all moneys received and expended and then sets out a statement that the balance was made up of certain notes totaling $5,334.99 and cash on hand in the amount of 82 cents, making a total of $5,335.81. Mr. Spellman, who was a certified public accountant and who also made a report of the doings of the trustee during the life of the trust, agrees with the report filed by the trustee, Milton Estes, except that instead of having cash on hand, Milton Estes, as trustee, had on hand notes totaling the amount above set out. All the notes which were on hand at the time of the filing of his final report were purchased by the trustee without any order or authority from the court, and some of the notes were past-due at the time purchased. The notes referred to herein, purchased by Milton Estes, trustee, do not come under the head of "securities approved" by section 12772 of the Code of Iowa. The uncontradicted

record shows that the notes which he purchased and which he had on hand at the time of filing his final report were worthless; that the makers of same were insolvent; that they were purchased without any order of court whatever.

The appellant surety company filed its bond to protect the parties interested in said trusteeship. It was paid a premium for that purpose. The trustee for whom it wrote the bond has failed to comply with the terms of his trust, and the appellant surety company is liable to the parties interested.

The judgment and decree of the lower court is correct, and same must be, and it is hereby affirmed.

KINDIG, C. J., and ALBERT, ANDERSON, and KINTZINGER, JJ., concur.